# The Bell Telephone Company of Pennsylvania v. Pinchot

*C. R. Bensinger* and *William H. Lamb*, for plaintiff. *Murdoch, Paxson, Kalish & Green* and *Kennard Lewis*, for defendant.

SHULL, P. J., November 26, 1941.—This plaintiff, The Bell Telephone Company of Pennsylvania, a corporation, brought its action against Gifford Pinchot, the defendant, seeking to recover the sum of $634.87, with interest on the sum of $384.65 from May 26, 1938, and on the sum of $286.22 from May 31, 1938. The claim arises from the installation of telephones and telephone service, but at the special instance and request of a "Pinchot For Governor State Committee" and a "Pinchot For Governor Citizens Committee".

The statement alleges:

"2. The defendant Gifford Pinchot, in January of 1938, some time prior to January 10th, announced himself as a candidate for the Republican nomination for Governor of Pennsylvania.

"3. Pursuant to this announcement and to the Act of June 3, 1937 (no. 320), P. L. 1333, art. XVI, secs. 1603, 1604, the said Pinchot on January 10, 1938, in writing authorized a committee known as Pinchot for Governor State Committee, of which P. Stephen Stahlnecker was manager and T. W. Rogers was treasurer, to collect and disburse moneys and to incur liabilities in the interests of his candidacy. A copy of such written authorization was filed in the office of the Secretary of the Commonwealth on January 11, 1938. A copy thereof is hereto attached marked Exhibit 'A' and made a part hereof.

"4. Pursuant to the announcement and the act of assembly as set forth above, the said defendant Pinchot on January 20, 1938, in writing authorized a committee known as Pinchot for Governor Citizens Committee, of which Thomas C. Egan was chairman and George L. Stark was treasurer, to collect, receive and disburse moneys and to incur liabilities in the interest of his candidacy. George J. Segal was the secretary of the said committee. A copy of said written authorization was filed in the office of the Secretary of the Commonwealth on or about January 21, 1938. A copy thereof

is attached hereto marked Exhibit 'B' and made a part hereof.

"5. On January 13, 1938, the Pinchot for Governor State Committee, acting through its manager, P. Stephen Stahlnecker, in the interest of said candidacy of defendant and pursuant to the authority granted by defendant aforesaid by written application requested plaintiff to furnish telephone service and equipment as specified therein and as thereafter ordered, for use by said committee in furtherance of the defendant's campaign. A true and correct copy of said application is attached hereto marked Exhibit 'C' and made a part hereof. . . .

"16. Plaintiff is informed, believes and therefore avers that during defendant's said campaign and prior to May 21, 1938 (the exact date being unknown to plaintiff), the said Pinchot for Governor State Committee, by P. Stephen Stahlnecker, manager, orally informed defendant that if said committee .carried out its plan of contributions to various county committees, the liabilities would exceed the funds on hand before the campaign ended, causing a deficit; and said defendant then orally to said Stahlnecker authorized said committee to incur in behalf of his candidacy a deficit up to $15,000. Plaintiff believes and therefore avers that said deficit was less than that sum."

Exhibit "A" referred to in paragraph 3 of the statement is as follows:

"January 10, 1938

Pinchot for Governor State Committee,
P. Stephen Stahlnecker, Manager
T. W. Rogers, Treasurer

GENTLEMEN:

I am a candidate for the Republican nomination for Governor of Pennsylvania and I hereby authorize your committee, of which P. Stephen Stahlnecker is manager and T. W. Rogers, treasurer, to collect, receive and dis-

burse moneys and to incur liabilities in the interest of my candidacy.

This letter is written pursuant to the Pennsylvania Election Code, being the Act of June 3, 1937 (No. 320).

Very truly yours,

(sgd)    GIFFORD PINCHOT.

(Home address: Milford, Pa.

Please address reply to

Bellevue-Stratford Hotel, Phila., Pa.)"

Exhibit "B" is identical in form with exhibit "A" except it is addressed to:

"Pinchot for Governor Citizens Committee,

Thomas C. Egan, Chairman

George L. Stark, Treasurer."

To this statement, defendant filed a statutory demurrer under section 20 of the Practice Act of May 14, 1915, P. L. 483, and it is upon this demurrer that the matter is now before the court.

Two questions are raised by this demurrer:

"1. Does the authorization of a committee by a candidate at a primary election, as required by section 1603(a) of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, constitute that committee such agent of the candidate as would under the law make the candidate responsible for indebtedness incurred in furtherance of the campaign for nomination of the candidate authorizing the committee?"

"2. Does a candidate at a primary election for nomination to an elective public office incur liability to an unpaid creditor of a political committee sponsoring his candidacy — assuming that he orally authorized the committee to incur a deficit on behalf of his candidacy?"

As to the first question, defendant's counsel urges that such authorization is required under the provisions of the election laws solely that obligations may be lawfully incurred by the committee and that a proper

accounting may be had thereof, and there was no legislative intent that the candidate be held to any personal liability for obligations incurred in the candidate's behalf by such committee. We find no merit in this contention. The fact that an enterprise is political could not suspend the operation of our laws as they apply to agency and contracts. The analogy that defendant makes between a candidate of a political party at election and a candidate for nomination at a primary is, to our mind, fallacious and could in no way apply. Seeking nomination is a personal or individual enterprise and this carries with it personal or individual liability, while the conducting of a campaign by a political party, for the election of one who has been chosen by it as the party nominee, is the enterprise of a volunteer association. As was said by our Superior Court in Irwin v. McCullough et al., 97 Pa. Superior Ct. 602, 604, quoting from Franklin Paper Co. v. Gorman, 76 Pa. Superior Ct. 276, 280:

" 'Voluntary associations for social, political or charitable purposes, and the like, are not partnerships, nor have their members the powers and responsibilities of partners. The officers, or a committee, or any number of members of such a party have no right to contract debts which will be valid against every member of the party, or of the committee, from the mere fact that he is a member of the party, or of the committee. But those who make a contract, not forbidden by law, are personally liable, and all are included in such liability who assented to the undertaking.' "

Though a nominee is not, under the law, personally responsible for the liabilities incurred by a political party or the officers of such party, still, should he specifically authorize or assent to the incurring of liabilities, then, under the law, he would be liable for them. But, an authorized committee in a primary is purely the creature of the candidate and the candidate has clothed his creature with the power to incur indebtedness in his behalf. This authorization is a matter of

public record and, therefore, notice to all the world. We can picture no reason why, under the law, such candidate is not responsible for the liabilities incurred in furthering his personal interests.

Defendant further urges as a reason why this should not be the law that, if a candidate were held to such liability, it "would lead to the result that no man could conduct a State-wide or any campaign without the personal financial means of underwriting it. On the scale that political campaigns are conducted these days, no one but a millionaire could be a candidate." Unfortunately, as a matter of fact, this is true unless such candidate happens to bask in the sunshine of those who are in the position of party officers or Commonwealth officeholders controlling State patronage, in which instance there can be, and is, rallied to such candidate's support the "bread and butter brigade", which automatically gives to him, without effort on his part, a State-wide organization reaching into every nook and cranny of the Commonwealth without cost to him in his campaign for nomination. And further relative to iniquitous political practices, though not pertinent to this issue, it might well be added that the service thus given by the "bread and butter brigade" in "preserving the Union" does not operate as a quod clerici beneficiati de cancellaria such as was enjoyed by the clerks of chancery in ancient times, and it is true that, without this last-mentioned approval, if a candidate is to have any hope of success in his candidacy for nomination to a State office of any moment, he must be a multimillionaire to be able to meet the demands of those not officially dictated to or those whose votes and influence are given not in response to the call of sound American principles of government or a real interest in efficient government, but upon a basis of quid pro quo—and in the present day and age they are myriad throughout the Commonwealth. We recognize the evil of this, but the cure, if any there be, is in the legislature and not in the courts.

As to the second question raised by the demurrer, it is, as we view it, a mere incident under the circumstances here presented. Were our view of the first question other than it is, we would view this question in the light of an original undertaking and not as a mere supplement or, perhaps, limitation of the agent's authority.

And now, November 26, 1941, demurrer is overruled and defendant allowed 15 days within which to file an affidavit of defense to the merits; otherwise, judgment for plaintiff.